UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MICHELLE L. BANDY,<br>      Plaintiff, | )<br>)<br>) |
| v. | )  CAUSE NO.: 2:16-CV-388-JVB-JPK |
| | ) |
| UNITED STATES STEEL<br>CORPORATION, *et al.*,<br>      Defendants. | )<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment of Defendant United States Steel Corporation ("U. S. Steel") [DE 71], filed December 14, 2018, and Motion of Defendants USW International Union and USW Local 2695 (the "Union Defendants") for Summary Judgment [DE 77], filed December 26, 2018. On March 7, 2019, U.S. Steel also filed a motion to strike certain evidence [DE 95]. For the reasons described below, U.S. Steel's motion to strike is denied, and Defendants' motions for summary judgment are both granted.

## PROCEDURAL HISTORY

On May 22, 2017, Plaintiff filed a seven-count Amended Complaint against Defendants U.S. Steel, USW International Union, and USW Local 2695, alleging discrimination and related claims arising from U.S. Steel's termination of her employment. The Amended Complaint alleges the following claims:

- Count 1 alleges a claim for unlawful retaliation by U.S. Steel, under Title VII of the Civil Rights Act of 1964 ("Title VII");

- Count 2 alleges discrimination based on race by U.S. Steel and USW Local 2695, under Title VII;

- Count 3 alleges discrimination based on age by U.S. Steel, under the Age Discrimination and Employment Act ("ADEA");

- Count 4 alleges discrimination based on race by all defendants, under 42 U.S.C. § 1981;

- Count 5 alleges retaliation by all defendants, under 42 U.S.C. § 1981;

- Count 6 alleges breach of contract against unspecified defendants;

- Count 7 alleges violation of the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. § 2101-2019, by U. S. Steel.

U.S. Steel moved for summary judgment on December 14, 2018, and the Union Defendants moved for Summary Judgment on December 26, 2018. Plaintiff responded to U.S. Steel's Motion on February 15, 2019, and U.S. Steel replied on March 7, 2019. Plaintiffs responded to the Union Defendants' motion on March 4, 2019, and the Union Defendants replied on March 22, 2019. On March 7, 2019, U.S. Steel also filed a motion to strike certain evidence in Plaintiff's response to its motion. Plaintiff responded on March 25, 2019, and U. S. Steel replied on April 2, 2019.

## SUMMARY JUDGEMNT STANDARD

Rule 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find" for the non-movant. *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations omitted). To demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material

2

facts," but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). In viewing the facts presented, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *Liberty Lobby*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). A court's role is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but to determine whether there is a genuine issue of triable fact. *Liberty Lobby*, 477 U.S. at 249-50.

## MATERIAL FACTS[1]

Defendant U.S. Steel owns numerous factories engaged in various aspects of steelmaking. The factories include its Gary Works Plant in Gary, Indiana, its Midwest Plant in Portage, Indiana, and its East Chicago Tin Facility in East Chicago, Indiana.

Plaintiff Michelle Bandy is a 56-year-old African-American woman. She was hired by U.S. Steel on May 5, 2008, to work in its Business Planning Department. The Business Planning Department, physically located in the Gary plant, provides customer service and job scheduling functions for the three plants. Mot. Ex. 9, Affidavit of Michael Foust [DE 72-9], ¶ 2. Between 2008 and 2013, Bandy worked in pickle[2] scheduling, primarily for the East Chicago plant. *Id.*, ¶ 11. In 2013, she was transferred to the job of customer service representative. *Id.* Although she worked primarily for the East Chicago facility in both jobs, *id.*, she also performed work for the Gary and Portage plants. Resp. Ex. 1, Deposition of Michelle Bandy [DE 87-1], 54:12-15.

A. <u>Bandy's EEOC Charges</u>

---

[1] The facts herein are undisputed unless otherwise indicated.
[2] "Pickling" refers to a surface treatment used to remove impurities from metal. *See* U.S. Steel Statement of Undisputed Facts [DE 73] at 3, n.5.

3

In March 2014, Bandy filed a charge with the EEOC alleging that her supervisor, Sean Reibly, engaged in race and sex discrimination when he imposed a one-day disciplinary suspension on her. Mot. Ex. 6, Affidavit of Laura Kocel [DE 72-6], ¶ 37. Bandy alleged that Reibly became "very verbally abusive" after determining that Bandy had not completed a task she was assigned the previous week. Mot. Ex. 3, Deposition of Michelle Bandy [DE 72-3], 245:5-12. According to Bandy, the grievance was "resolved" in March 2015. *See* Resp. Ex. 1 [DE 87-9]. The EEOC issued Bandy a "Right to Sue" notice, but she did not file a lawsuit. Bandy Dep. 320:1-11.

On January 20, 2015, U.S. Steel provided written notice to Defendant's union[3] that it would be reducing operations at the East Chicago plant. Kocel Aff. ¶ 10. Among other measures, U.S. Steel decided to eliminate several positions from the Business Planning Department, including Bandy's. Kocel Aff. ¶ 10, Faust Aff. ¶ 14. A notice attached to U.S. Steel's motion, dated January 20, 2015, identifies Bandy on the last page as an employee "affected" by its decision, and indicates that it was sent to union representative Rafael Cruz. *See* Kocel Aff. ¶ 11, Kocel Aff. Ex. B [DE 72-6] at 85. Bandy testified that she saw the notice given to the union and her name was not on it. Bandy Dep. 248:17-19.

When an employee is about to be laid off, the Union often negotiates with U.S. Steel to try to find other work for the affected employee. Mot. Ex. 5, Deposition of Rafael Cruz [DE 72-5], 21:1-7, 29:1-6. On February 6, 2015, after negotiation with Union representatives, U.S. Steel agreed to transfer Bandy to a job in pickle scheduling for the Gary plant. Cruz Dep. 16:1-16. Once she assumed the pickle scheduling job, Bandy would get five to six weeks to train and "qualify" for the job. Kocel Aff. ¶ 10. The time it takes to learn pickle scheduling varies; some employees

---

[3] Specifically, Defendant submits evidence that the notice was submitted to "United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union – Salaried Office and Technical Employees – Local 2695." Kocel Aff ¶ 6, 10.

4

take more than six weeks, some take less. Mot. Ex. 7, Affidavit of Beverly Hernandez [DE 72-7], ¶ 3-4. U.S. Steel gave Bandy six weeks because it was planning to make its layoffs in six weeks and wanted to determine whether Bandy could do the job. Resp. Ex. 5, Deposition of Rita Stasik [DE 87-5], 36:1-12. Unlike some employees who had taken longer to train, Bandy had performed pickle scheduling at another plant, and would be dedicated full-time to learning her new position. Hernandez Aff. ¶ 7.

On February 9, 2015, Bandy was transferred to the pickle scheduling position. Bandy was not told about the reason for the transfer. Bandy Dep. 104:6-12. She began training immediately and received training "just about every day" from several different people. *Id.*, 103:12-15, 112:7-20. After four to five weeks, Bandy told her supervisor that training was "going well," but that she needed more training, and had not yet learned the job. *Id.* 116:8-14. After six weeks, her supervisor, Beverly Hernandez, determined that Bandy "did not have the ability to perform the job on her own." Hernandez Aff. ¶ 7; Kocel Aff. ¶ 18. Bandy was laid off effective March 29, 2015.[4] Kocel Aff. ¶ 18. On September 9, 2015, Bandy filed a charge with the EEOC alleging race, sex and age discrimination occurring between February 15, 2020 and March 30, 2015, roughly the dates when she was working the pickle scheduling job. Bandy Dep. 135:24-25.

B. Bandy's Union Grievance

U.S. Steel's right to lay off employees is limited by the Basic Labor Agreement (BLA) negotiated by U.S. Steel and the Union. The BLA provides that, when deciding which employees to lay off, "the following factors shall be considered: (1) ability to perform the work and physical fitness, and (2) Plant Continuous Service. Where factor (1) is relatively equal between Employees,

---

[4] After being laid off from the pickle scheduling positions, Bandy was re-hired by U.S. Steel for several temporary positions before she secured employment elsewhere in July 2016. Kocel Aff. ¶ 31; Bandy Dep. 10:1-14. Bandy's responses to summary judgment do not assert that any discrimination or retaliation arose from the temporary employment.

5

Plant Service shall be the determining factor." Kocel Aff. Ex. A, [DE 72-6] at 13 (Article 5, Section E1(c) of BLA).

After her termination, Bandy told a union representative that other, less senior employees in the Business Planning Department had been retained while she had been fired, in violation of the BLA. Mot. Ex. D, Declaration of Alexander Jacque [DE 78-1], ¶ 5. Defendant Local 2695, the local branch of Bandy's union, filed a grievance on her behalf against U.S. Steel. *Id.* The Union represented Bandy at an initial hearing ("step two" of the grievance process), an appeal ("step three"), and then an arbitration, and Bandy lost at each stage. *Id.*, ¶ 6. Under the BLA, the arbitration award is final and cannot be appealed. *Id.*, ¶ 13.

The Union was hesitant to pursue the case, Bandy Dep. 221:1-6, and did not do so in the manner Bandy wanted. Bandy did not see her grievance until two months after it was filed, and "was not given any chance to have input" into her grievance. Bandy Dep. 261:18-24, 279:25-280:1-2. The Union elected not to pursue Bandy's initial argument that she was laid off while junior members of the Business Planning Department were kept on, because the Union found that those employees had more seniority at their plant than she did, as defined in the BLA. Jacque Decl. ¶ 8-9. The Union instead argued, unsuccessfully, that Bandy's comparators in the seniority analysis should include a bigger group of employees who worked in a broader range of jobs. *Id.*, ¶ 10. After the grievance process was over, a union representative testified that U.S. Steel was justified in its decision to terminate Bandy. Resp. Ex. 8, Deposition of Alexander Jacque [DE 92-8], 22:13-16.

## ANALYSIS

### A. U.S. Steel's Motion to Strike

U.S. Steel moves to strike certain evidence submitted by Bandy in response to its motion. Generally, a court considers only admissible evidence in assessing a motion for summary

judgment. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). Evidence can also be considered from materials that would be inadmissible at trial if the facts therein could later be presented in an admissible form. *Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014) (citing Fed. R. Civ. P. 56(c)(2)-(4); *Finnegan v. Myers*, No. 3:08-CV-503, 2015 WL 5252400, at *2 (N.D. Ind. Sept. 8, 2015) ("In other words, the Court must determine whether the material can be presented in a form that would be admissible at trial, not whether the material is admissible in its present form."). Motions to strike evidence submitted in response to summary judgment are "generally disfavored, and usually only granted in circumstances where the contested evidence causes prejudice to the moving party." *Smith v. Nexus RVs, LLC*, No. 3:17-CV-00815-DRL-MGG, 2020 WL 3403178, at *11 (N.D. Ind. June 19, 2020) (citations omitted).

First, U.S. Steel seeks to strike three transcripts of telephone conversations between Bandy and her Union representatives as hearsay. Hearsay is an out-of-court statement not made under oath, offered for the truth of the matters asserted. Fed. R. Evid. 801(c). Bandy argues that union representatives' statements are admissible against U.S. Steel, because "a co-defendant's admission against interest is admissible against a defendant." An statement against interest is an exception to the hearsay rule if (1) the declarant is unavailable, and (2) "a reasonable person in the declarant's position would have made [the statement] only if the person believed it to be true because, when made, it was [ ] contrary to the declarant's proprietary or pecuniary interest." Fed. R. Evid. 804(b)(3). Since Bandy has not shown that the declarants were unavailable to testify, this exception does not apply.[5] However, no party has shown whether the statements could be presented in an admissible form at trial. Fed. R. Civ. P. 56(c)(2); *Morgan*, 750 F.3d at 714. For this reason, and

---

[5] To the extent Bandy argues these are statements by a party opponent excluded from the definition of hearsay under Rule 801, the argument fails, because such statements are only admissible if offered against the declarant. Fed. R. Evid. 801(d)(2)(A).

7

because the Court does not find that the statements are prejudicial to U.S. Steel for the purpose of this motion, the transcripts will not be stricken.

Next, U.S. Steel identifies numerous facts presented in Bandy's response that are not adequately supported by citations to the record. In response, Bandy attaches "a redline version [of her response brief] with citations to the record." The Court declines to separately evaluate each individual fact, but will not accept Bandy's "redlined" brief or permit her to revise prior briefing. Where one of these disputed facts is relevant to the Court's analysis of the motions, the Court will separately address whether the fact is adequately supported.

### B. Motions for Summary Judgment

Because most of the counts are pled against multiple defendants, the Court considers the pending motions for summary judgment simultaneously.

**1. Title VII/ADEA/§ 1981 Claims (Counts 1 through 5)**

Count 1 of the Amended Complaint alleges a claim for unlawful retaliation by U.S. Steel under Title VII. Count 2 alleges discrimination based on race by U.S. Steel and USW Local 2695 under Title VII. Title VII provides, in part, that an employer cannot discriminate against an individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of" her race or sex. 42 U.S.C. § 2000e-2(a)(1). For a Title VII retaliation claim, the employee must show that "(1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two." *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 464 (7th Cir. 2016). Similarly, for a Title VII discrimination claim, the employee must prove three elements: (1) membership in a protected class, (2) an adverse employment action, and (3) that the adverse action was taken because of the employee's membership in the protected class. *Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013).

Count 3 alleges discrimination based on age by U.S. Steel, under the Age Discrimination and Employment Act ("ADEA"). Under the ADEA, an employer cannot discriminate against a person aged 40 or older with respect to compensation, terms, conditions, or privileges of employment "because of such individual's age." 29 U.S.C. § 623(a)(1), § 631(a). The plaintiff must prove that "but for his age, the adverse [employment] action would not have occurred." *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018) (citing *Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 455 (7th Cir. 2009)). Counts 4 and 5 allege race discrimination and retaliation under 42 U.S.C. § 1981, which carries the same legal standard as Title VII. *Bennett v. Roberts*, 295 F.3d 687, 697 (7th Cir. 2002).

Ultimately, the standard[6] for each of these claims "is simply whether the evidence," considered as a whole, "would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). Unless there is a direct admission of discriminatory intent, evidence of discrimination typically includes "(1) suspicious timing, ambiguous oral or written statements, or behavior toward, or comments directed at, other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; or (3) evidence that the employer offered a pretextual reason for an adverse employment action." *Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 805 (7th Cir. 2014).

---

[6] Courts routinely analyze discrimination cases under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). However, the Seventh Circuit Court of Appeals has recently emphasized that *McDonnell Douglas* is "a means of organizing, presenting, and assessing circumstantial evidence," but "not the only way." *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018) (quoting *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017)).

9

The parties agree that Bandy is a member of a protected class by virtue of her age and race, and that she suffered an adverse employment action. Bandy argues that U.S. Steel transferred Bandy to pickle scheduling knowing that she could not learn the job in the time allotted, to "get rid of her" because she filed an EEOC charge against her supervisor. U.S. Steel argues that Bandy's transfer was a voluntary accommodation it offered her as an alternative to termination, and her eventual termination from the pickle scheduling job arose from her inability to learn that job. The Court agrees with U.S. Steel that Bandy has not presented sufficient evidence of discrimination to create a genuine issue for trial.

Bandy filed her initial grievance on March 31, 2014, alleging that her supervisor had improperly disciplined her based on her race and sex. According to Bandy, the grievance was resolved in March 2015, a short time after she began the pickle scheduling job on February 9, 2015. Bandy argues that the timing supports a finding of discrimination. Affording all reasonable inferences to Bandy, the timing was suspicious in that the grievance was "resolved" days or weeks before she was fired on March 29, 2015. However, suspicious timing, on its own, does not sustain an inference of discrimination. *See Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 898 (7th Cir. 2015) (suspicious timing may preclude summary judgment against a plaintiff "if there is corroborating evidence that supports an inference of causation"); *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012) ("[T]emporal proximity between an employee's protected activity and an adverse employment action is rarely sufficient to show that the former caused the latter."); *Jones v. Alpha Rae Pers., Inc.*, 903 F. Supp. 2d 680, 681–82 (N.D. Ind. 2012). In this case, Bandy provides no other evidence that the grievance was related to her termination. Bandy does not argue that the supervisor was involved in the decision to transfer and fire her. Other than conclusory allegations that her transfer and termination were due to race and age, she offers no evidence of

10

discriminatory behavior, policy, or statements by anyone at U.S. Steel or any representative of her union. In addition, U.S. Steel presents strong evidence indicating a legitimate reason for the timing of Bandy's transfer and termination, specifically, the shutdown of operations at the East Chicago plant where Bandy's work was primarily focused. It is undisputed that U.S. Steel decided to lay off numerous employees working for the East Chicago plant at the same time as Bandy, including two others from the Business Planning Department.

Bandy argues that the terms of her February 9, 2020 transfer to pickle scheduling are evidence of discrimination. Essentially, she argues that she was set up to fail because U.S. Steel gave her inadequate time to learn the new job, and there were more suitable jobs available. But once it decided to eliminate Bandy's position, U.S. Steel was not obligated to transfer her to another job, let alone the job of her choice. The union negotiated Bandy's transfer to the new job, including the six-week training period, because the alternative was termination. Bandy presents no evidence that other employees facing termination would have gotten better treatment in the same situation.

Finally, Bandy argues that other employees in the Business Planning Department were similarly situated to her and should have been fired before her. Employees are "similarly situated" for purposes of a discrimination claim if they are "directly comparable in all material respects." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). In cases involving an employer's "reduction in force" for economic reasons, similarly situated employees must possess "analogous attributes, experience, education, and qualifications relevant to the positions sought." *Id.* at 610–11 (citing *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000)). Two employees from the same department are not necessarily similarly situated if the jobs require different skills. *See, e.g., Fisher v. Wayne Dalton Corp.*, 139 F.3d 1137, 1141 (7th Cir. 1998) ("Although Matznick

11

is obviously more than ten years younger than Fisher, they are not similarly situated employees because in addition to their common qualifications as production schedulers, Matznick also has extensive experience in inputting information into the PMF/BOM.").

Therefore, Bandy's assertion that she was similarly situated to other Business Planning employees because they performed "customer service" jobs is insufficient. Although Bandy testified that all customer service jobs at the three plants are "identical," Bandy Dep. 82:22-83:2, the record demonstrates otherwise. U.S. Steel presents evidence that customer service jobs are different because they require understanding of different products, different shipping procedures, and different facilities in each plant. *See* Foust Aff. ¶ 4-5. Aside from her general contention that the jobs are all the same, Bandy does not dispute these facts or explain why they would not lead to differences in the expertise required for the different jobs. Bandy's argument is further undermined by the fact that she was unable to learn the pickle scheduling job at the Gary plant despite working in pickle scheduling at the East Chicago plant from 2008 to 2013. Bandy herself testified that she struggled to learn the new job because the products in each plant are different. Bandy Dep. 111:19-112:11. Bandy does not explain why that reasoning does not apply to the jobs of her alleged comparators. U.S. Steel also presents specific evidence that the comparators performed different jobs that Bandy was not qualified for, or were fired at the same time she was. *See*, *e.g.*, Kocel Aff. ¶ 14 (Karl Matt), ¶ 21 (Tim Gurn), ¶ 23 (Paula Frye), ¶ 26 (Jennifer Rozenich). Because Bandy's contention that her alleged comparators' jobs require identical skills is "blatantly contradicted by the record," the Court does not adopt it for purposes of summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Because Bandy has not shown that she was transferred and terminated because of her race, her age, or her prior EEOC grievance, and has not shown that employees similarly situated to her

were systematically treated differently from her, she cannot establish a genuine issue for trial as to the discrimination and retaliation claims. Therefore, the Court does not address Bandy's argument that the Union Defendants are liable because they "acquiesc[ed] and ratif[ied]" the alleged discrimination and retaliation. Summary judgment is granted as to all Defendants on Counts 1 through 5.

**2. Breach of Contract Claims (Count 6)**

In Count 6, Bandy pleads an unspecified "breach of contract" claim against all Defendants arising from alleged violations of the BLA.[7] The Labor Management Relations Act ("LMRA") provides a cause of action in federal court for breaches of labor agreements. *See* 29 U.S.C. § 185(a). State law contract claims "founded directly on rights created by collective bargaining agreements" are preempted by the LMRA. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393-394 (1987). Bandy argues that "because Bandy's union failed her, Bandy has standing to sue U.S. Steel directly for violation of the BLA, otherwise Bandy would have no remedy for U.S. Steel's breach of the agreement." Bandy cites no coherent legal support for this position.[8] Her state law breach of contract claim is preempted by the LMRA.

Under the LMRA, when an employee sues to challenge the result of a grievance resolved between the employer and the union, the employee's remedy is a "hybrid" claim against the union under § 301 of the LMRA. *See Olson v. Bemis Co.*, 800 F.3d 296, 303 (7th Cir. 2015). The employee would have to show that the employer breached the agreement and that the union

---

[7] Bandy alleges that all Defendants violated a clause in the BLA prohibiting retaliation against employees, and that the Union Defendants violated "Section H which pertains to the adjustment of grievances."

[8] *F. W. Woolworth Co. v. Miscellaneous Warehousemen's Union, Local No. 781*, 629 F.2d 1204 (7th Cir. 1980), cited by Bandy, does not discuss preemption or contemplate extra remedies for an employee dissatisfied with her union's representation.

13

breached its duty to fairly represent her. *Nemsky v. ConocoPhillips Co.*, 574 F.3d 859, 864 (7th Cir. 2009).

To the extent such a claim was intended here, the claim fails because even if U.S. Steel violated the BLA, Bandy has not shown that the union breached its duty of fair representation. A union breaches its duty of representation where its conduct is "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). The union must provide "some minimal investigation of employee grievances," but "only an egregious disregard for the union members' rights constitutes a breach of the union's duty." *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003) (quotations and citations omitted). The employee must also show that the outcome "would probably have been different" but for the union's behavior. *Matthews v. Milwaukee Area Local Postal Workers Union*, AFL-CIO, 495 F.3d 438, 441 (7th Cir. 2007).

In this case, Bandy has not shown that the union discriminated against her or acted arbitrarily or in bad faith. As with her claims against U.S. Steel, Bandy offers no evidence of discriminatory statements, behavior, or intent by the union. Bandy's complaints about the union's strategy in pursuing the grievance, and her lack of input into the process, do not demonstrate an "egregious disregard" for her rights. To the contrary: the union pursued her grievance to the final arbitration stage, farther than it was obligated to, despite the lack of evidence that U.S. Steel's actions violated the BLA. Nothing in the record indicates that the outcome would have been different if the union had acted differently. Therefore, Bandy cannot succeed on a hybrid § 301 claim, and summary judgment is granted as to Count 6.

### 3.  WARN Act Violation (Count 7)

Bandy also claims a violation of the Worker Adjustment and Retraining Notification ("WARN") Act by U.S. Steel. Under the WARN Act, when conducting a "mass layoff," the

14

employer must provide notice "to each representative of the affected employees as of the time of the notice." 29 U.S.C. § 2102(a)(1). Bandy argues that she never received U.S. Steel's WARN notification and that "another employee showed Bandy the WARN list and Bandy was not on it." Bandy cites no legal authority for the premise that she, personally, had to receive the WARN notice. The statute only requires that her "representative" receive the notice. *See* § 2102(a)(1).

To the extent Bandy argues that none of her representatives received the notice, or that her name was somehow omitted, those allegations are contradicted by the record. The notice produced by U.S. Steel identifies Bandy as an "affected employee," and indicates that a copy was sent to Rafael Cruz, a union representative. Kocel Aff. Ex. B [DE 72-6] at 16, 25. Bandy offers no evidence that the union received anything different.[9] The undisputed testimony of the U.S. Steel and union representatives indicates that the union negotiated a transfer for Bandy on February 9, 2015, based on the union's understanding that she was going to be affected by the layoffs announced in the notice. On these facts, no reasonable jury could find that U.S. Steel did not provide notice of the layoffs. Bandy's complaints that the Union failed to tell her about the notice and its implications do not establish liability under the WARN Act for U.S. Steel.

## CONCLUSION

For the reasons described above, the Court hereby **DENIES** U.S. Steel's Motion to Strike Evidence Submitted by Plaintiff [DE 95], and **GRANTS** the Motion for Summary Judgment of Defendant United States Steel Corporation ("U. S. Steel") [DE 71] and Motion of Defendants USW International Union and USW Local 2695 (the "Union Defendants") for Summary Judgment

---

[9] Although Bandy claims "Cruz admitted to [union representative Alexander] Jacque that Cruz never received a WARN notification for Bandy," no such admission is discernable from the evidence cited. While Jacque apparently believed that Bandy was not impacted by the notice, Cruz denied saying that. *See* [DE 87-8] (Jacque Telephone Transcript) at 16:1-9.

[DE 77]. The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendants on all counts.

SO ORDERED on November 30, 2020.

                                            s/ Joseph S. Van Bokkelen
                                            JOSEPH S. VAN BOKKELEN, JUDGE
                                            UNITED STATES DISTRICT COURT